**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-cv-00184**

| | |
|---|---|
| TABITHA BOYKIN o/b/o<br>KAREN LYNN DUNKLEY,<br><br>   **Plaintiff,**<br><br> v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>   **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

 **THIS MATTER** is before the Court upon Plaintiff's Social Security Brief (Doc. No. 8) and the Commissioner's Motion for Summary Judgment (Doc. No. 12). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I. Administrative History**

 On April 24, 2020, Plaintiff filed claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging disability since August 25, 2014. (Tr. 383, 407, 418, 429.) Plaintiff later amended the alleged onset date to March 6, 2019. (Tr. 574.) Plaintiff's claims were denied initially on November 18, 2020, and again upon reconsideration on September 16, 2021. (Tr. 405–06, 426–27, 443–46, 447–50.)

 On March 16, 2022, at Plaintiff's request, the administrative law judge ("ALJ") held a telephonic hearing during which Plaintiff (represented by counsel) and a vocational expert provided testimony. (Tr. 336–57.) On March 30, 2022, the ALJ issued a decision, finding that Plaintiff was able to perform light work that required understanding, remembering, and carrying out instructions

1

involving no more than three steps, perform simple tasks for up to two hours without a break, make simple work-related decisions in an environment with no more than occasional workplace changes, and occasionally interact with colleagues and the general public. (Tr. 11–27.)

Plaintiff requested the Appeals Council's review of the ALJ's decision but passed away on August 18, 2022. (Tr. 33–34.) The Appeals Council denied Plaintiff's request for review on October 28, 2022, rendering the ALJ's decision the Commissioner's final administrative decision on Plaintiff's claim. (Tr. 1–7.) Thereafter, Plaintiff's daughter, Tabitha Boykin, timely filed this action on her mother's behalf.

## II.   Factual Background

The undersigned adopts and incorporates the ALJ's findings of facts herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.   Standard of Review

This Court's review of the Commissioner's determination is limited to evaluating whether the findings are supported by substantial evidence and whether the correct law was applied. *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). Moreover, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citation omitted). A reviewing court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," this Court will defer to the Commissioner's decision. *Johnson*, 434 F.3d at 653 (internal quotation marks omitted).  Thus,

Case 5:22-cv-00184-GCM   Document 14   Filed 08/17/23   Page 2 of 10

the only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## IV.    Discussion

### A.    Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the ALJ's decision is supported by substantial evidence. The undersigned finds that it is not.

### B.    Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)    Whether the claimant is engaged in substantial gainful activity;

(2)    Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3)    Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    Whether the claimant has the residual functional capacity to perform the requirements of her past relevant work; and

(5)    Whether the claimant is able to do any other work, considering her residual functional capacity, age, education, and work experience.

3

20 C.F.R. §§ 404.1520(a)(4)(i–v).

In this case, the ALJ determined Plaintiff's claim at the fifth step of the sequential evaluation process, reasoning that she could adjust to work as a small parts assembler, marker, and routing clerk. (Tr. 26–27.) This decision was based on a vocational expert's testimony that an individual of Plaintiff's age, education, work experience, and residual functional capacity could perform these occupations and the ALJ's determination that this testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"). (*Id.*)

## C.    The Administrative Decision

In rendering her decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since March 6, 2019, the amended alleged onset date. (Tr. 14.)

At the second step, the ALJ found that Plaintiff suffered from the following severe impairments prior to the disability date: peripheral arterial disease, history of transient ischemic attack, hypertension, hyperlipidemia, cervical radiculopathy, cervicalgia, degenerative disc disease, bursitis, obesity, chronic obstructive pulmonary disease, stage III chronic kidney disease, colitis, and depression. (*Id.*)

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 14–19.)

The ALJ then found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except she could:

> occasionally climb ramps and stairs, but never climb ladders ropes
> or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl;
> [have] occasional exposure to fumes, odors, and pulmonary
> irritants; [and] occasionally work around hazards such as moving
> mechanical parts or unprotected heights. The claimant can
> understand, remember, and carry out instructions involving no
> more than three steps. The claimant can perform simple tasks for
> up to two hours without a break. The claimant can use judgment to

4

> make simple work-related decisions in an environment with no
> more than occasional workplace changes. The claimant can
> occasionally interact with supervisors, coworkers, and the general
> public.

(Tr. 19.)

In making this finding, the ALJ considered all of Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as required by 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Regulation ("SSR") 16-3p. (*Id.*) The ALJ also considered opinion evidence and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (*Id.*) While the ALJ found that Plaintiff did have certain severe impairments that may reduce Plaintiff's functional capacity, she reasoned that the overall record reflected that Plaintiff should be capable of work activity at least within the light range of exertion and noted that none of Plaintiff's examiners noted any work-preclusive limitations. (Tr. 20.) For these reasons, the ALJ determined that Plaintiff could not be found disabled under Social Security regulations. (*Id.*)

At the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work as a telephone representative. (Tr. 25.)

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that claimant could perform. (Tr. 26.) As noted above, in making this determination, the ALJ cited to vocational expert testimony that in light of these factors, Plaintiff

5

could perform the jobs of a small parts assembler, marker, and routing clerk as defined in the DOT. (Tr. 26–27.)[1]

In conclusion, the ALJ determined that Plaintiff was not under disability from her amended alleged onset date through the date of the ALJ's decision. (Tr. 27.)

### D.    Discussion

Here, Plaintiff makes only one assignment of error: the ALJ erred by failing to resolve apparent conflicts between the vocational expert's testimony regarding jobs Plaintiff could perform with her residual functional capacity and the DOT description of what those jobs require. (Pl.'s Br. at 5, 14.) Plaintiff contends that this failure violates SSR 00-4p and the Fourth Circuit's decision in *Pearson v. Colvin*, 810 F.3d 208 (4th Cir. 2015). (*Id.* at 9.)

First, Plaintiff contends that, according to the DOT, the role of a small parts assembler requires performance of GED reasoning level "2" tasks, including carrying out "detailed but uninvolved written instructions," which runs contrary to the ALJ's residual functional capacity limitation to "instructions involving no more than three steps." (*Id.* at 10.) Further, Plaintiff argues that the job requires workers to frequently perform tasks as part of an assembly group, which violates the residual functional capacity limitation to only occasional interaction with supervisors and colleagues. (*Id.* at 11.) Finally, Plaintiff contends that the role would require a worker to perform tasks on an assembly line and load and unload various machines and presses, which violates the residual functional capacity restriction to only "occasionally work around hazards such as moving mechanical parts." (*Id.*)

---

[1] At the hearing during which the vocational expert answered the ALJ's questions regarding these jobs, Plaintiff declined to question the expert's testimony. (Tr. 356.)

Next, Plaintiff argues that the second job of a marker, also requiring performance of level "2" tasks, again requires workers to carry out detailed instructions, which violates the ALJ's residual functional capacity limitation to tasks involving more than three steps. (*Id.* at 12.)

Finally, Plaintiff contends that the job of a routing clerk, like the previous two jobs, violates the ALJ's residual functional capacity limitation to jobs involving no more than three steps because the role requires performance of level "2" tasks, or carrying out detailed but uninvolved instructions, which could likely require more than three steps. (*Id.* at 13.) Further, Plaintiff notes that a routing clerk position would require sorting packages on a conveyer belt, which would also violate the ALJ's residual functional capacity restriction to only occasionally working around hazards such as moving mechanical parts. (*Id.*)

Plaintiff argues that the ALJ neither addressed nor resolved obvious conflicts between the vocational expert's testimony that Plaintiff could perform any of these three jobs and the DOT description of the jobs, which require mental acuity in excess of Plaintiff's residual functional capacity. (*Id.* at 14.) As such, Plaintiff contends the vocational expert's testimony cannot provide "substantial evidence" to support the ALJ's decision. (*Id.*)

The Commissioner bears the burden of proving that a claimant is able to perform alternative work at step five of the five-step sequential process in evaluating a disability claim. *Pearson*, 810 F.3d at 207 (citation omitted). In determining the answer to this question, the ALJ primarily relies on the DOT, but may also use a vocational expert "to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* (citation omitted). If a vocational expert's testimony conflicts with the DOT, the ALJ must ask, on the record, whether the expert's testimony conflicts with the DOT, and "elicit a reasonable

7

explanation for" and "resolve" conflicts between the testimony and the DOT. *Id.* at 207–08 (citation omitted). The ALJ is required to determine that the expert's explanation is "reasonable" and resolve any conflicts before relying on the expert's evidence to support a determination about whether a claimant is disabled. *Id.* at 208 (citation omitted) This requires the ALJ to do more than ask the expert if their testimony is consistent with the DOT and receive an affirmative response—the ALJ must ask the vocational expert to explain any discrepancy and "independently identify [and explain] conflicts between the expert's testimony and the [DOT]." *Id.* at 208–09 (citations omitted). This includes a requirement to identify where the vocational expert's testimony "seems to, but does not necessarily, conflict with the [DOT]." *Id.* at 209.

As an initial matter, as the Commissioner notes, Plaintiff did not voice any concerns regarding Plaintiff's limitations in response to the vocational expert's testimony. (Def.'s Mot. at 7; *see also* Tr. 356.) However, "the administrative hearing process is not an adversarial one, and an ALJ has a duty to investigate the facts and develop the record independent of the claimant or his counsel." *Pearson*, 810 F.3d at 210 (citation omitted).

Further, as Plaintiff argues, there is an apparent conflict between the requirements for the jobs offered by the vocational expert and the ALJ's residual functional capacity limitations in that level "1" jobs include those with instructions of one to two steps, but the DOT does not state that level "2" jobs include those requiring an individual to follow instructions of three or more steps. *See* DOT, App'x C. Moreover, reviewing the transcript of the vocational expert's testimony, the Court notes that the vocational expert only gave high-level explanations of work involved for the three positions, and said that he would let the ALJ know if his testimony contradicted the DOT. (Tr. 353–55.) The expert did not affirmatively note any conflict or thoroughly explain that a conflict did not exist or provide his reasoning for why the three roles

8

did not conflict with the ALJ's residual functional capacity limitations. Further, though the ALJ indicated in her administrative opinion that she "determined that the vocational expert's testimony is consistent with the information contained in the [DOT]" (*id.* 26–27), she makes no mention of the apparent conflicts in level "1" and "2" job requirements and any requirements of interaction with moving mechanical parts or interaction with supervisors and colleagues. As such, the Court determines that the vocational expert's testimony cannot provide substantial evidence to support the ALJ's decision at step five. *See Pearson*, 810 F.3d at 209. Remand is thus appropriate here.

## V.     Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's brief and assignment of error, the Commissioner's motion to dismiss, and Plaintiff's reply.  Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. Accordingly, Plaintiff's request for a remand of the matter for a new hearing is granted, and the Commissioner's Motion to Dismiss is denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)    the decision of the Commissioner, denying the relief sought by Plaintiff, is

    **REMANDED**;

(2)    Plaintiff's Motion (Doc. No. 8) is **GRANTED IN PART**; and

(3)    the Commissioner's Motion for Summary Judgment (Doc. No. 12) is **DENIED**.

Signed:  August 17, 2023

Graham C. Mullen
United States District Judge

10